UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

INTERNATIONAL BUSINESS MACHINES :
CORPORATION,
                                                         :
            Plaintiff,
                                                         :
        -against-
                                                         :
GARY ISAACS
                                                         :
            Defendant.
------------------------------------------------------------X

**COMPLAINT**

Case No. _____

**13 CV 2450**

Plaintiff, International Business Machines Corporation ("IBM"), by its attorneys, Putney, Twombly, Hall & Hirson LLP, as and for its Complaint against Defendant, Gary Isaacs ("Defendant" or "Isaacs"), alleges as follows:

### IDENTITY OF THE PARTIES

1.   IBM is a corporation duly organized under the laws of the State of New York, with its principal place of business in Armonk, New York.

2.   Defendant Isaacs is an individual currently residing in Ontario, Canada.

3.   Isaacs was employed by IBM in a senior executive position as Director, Business Partner Sales North America, located in Markham, Ontario.

1

## JURISDICTION AND VENUE

4. This is a diversity matter between citizens of the United States and Canada, and the amount in controversy exceeds $75,000. Jurisdiction is appropriate under 28 U.S.C. § 1332(a)(2). Moreover, the parties have contractually agreed to the Jurisdiction of this Court by the terms of the contracts referred to below as the IBM 2001 Long-Term Performance Plan ("the IBM Plan"), dated May 7, 2002 as amended through August 1, 2007, the various Equity Award Agreements ("EAA") executed during the course of Defendant's employment at IBM, and the Terms and Conditions of "Your Equity Award: Effective June 8, 2011" ("Terms and Conditions").

5. Venue is proper in this Judicial District by the parties' agreements and defendant's consent in the aforementioned IBM Plan, the EAA, and Terms and Conditions.

## NATURE AND BACKGROUND OF THE ACTION

6. This is an action for monies due and owing to IBM by defendant as a result of the rescission by IBM of the stock options and equity awards (collectively "Awards"), previously granted defendant as further described herein.

7. During all relevant times herein, Isaacs was a participant in the IBM Plan.

8. As stated in Section 1 thereof, termed "Objectives," the IBM Plan is "designed to attract, motivate and retain selected employees of, and other individuals providing services to, the Company. These objectives are accomplished by making long-term incentive and other awards under the Plan, thereby providing Participants with a proprietary interest in the growth and performance of the Company."

9. Defendant terminated his employment with IBM on or about December 31, 2011.

10. Defendant commenced employment with Cisco Systems Inc., or an affiliate, Cisco Canada, (collectively "Cisco"), on or about January 16, 2012.

11. Cisco is engaged in business activity which is competitive with Plaintiff.

**Contractual Grounds for**
**Rescission of Grants and Awards**

12. During his employment with IBM Plaintiff was given the opportunity to receive Awards under the terms and conditions of the IBM Plan, the EAA, and the Terms and Conditions cited in paragraph 4 hereto, and further described herein.

13. As a result of his employment by Cisco, IBM is entitled to Cancel and Rescind Awards paid to Defendant, and has so rescinded these Awards.

14. As stated in relevant part in Section 13(a) of the IBM Plan, entitled "Cancellation and Rescission of Awards":

> Unless the Award Agreement specifies otherwise, the Committee may cancel, rescind, suspend, withhold or otherwise limit or restrict any unexpired, unpaid, or deferred Awards at any time if the Participant is not in compliance with all applicable provisions of the Award Agreement and the Plan, or if the Participant engages in any 'Detrimental Activity.' For purposes of this Section 13, "Detrimental Activity" shall include: (i) the rendering of services for any organization or engaging directly or indirectly in any business which is or becomes competitive with the Company, or which organization or business, or the rendering of services to such organization or business, is or becomes otherwise prejudicial to or in conflict with the interests of the Company; (ii) the disclosure to anyone outside the Company, or the use in other than the Company's business, without prior written authorization from the Company, of any confidential information or material, as defined in the Company's Agreement Regarding Confidential Information and Intellectual Property, relating to the business of the Company, acquired by the Participant either during or after employment with the Company; . . . (vi) any attempt directly or indirectly to induce any employee of the Company to be employed or perform services elsewhere, or any attempt directly or indirectly to solicit the trade or business of any current or prospective customer, supplier or partner of the

3

Company; . . . ." (emphasis supplied).

15.  In addition, Section 13(b) of the IBM Plan provides, in relevant part, that:

Upon exercise, payment or delivery pursuant to an Award, the Participant shall certify in a manner acceptable to the Company that he or she is in compliance with the terms and conditions of the Plan. In the event a Participant fails to comply with the provisions of paragraphs (a)(i)(viii) of this Section 13 prior to, or during the Rescission Period, then any exercise, payment or delivery may be rescinded within two years after such exercise, payment or delivery. In the event of any such rescission, the Participant shall pay to the Company the amount of any gain realized or payment received as a result of the rescinded exercise, payment or delivery, in such manner and on such terms and conditions as may be required, and the Company shall be entitled to set-off against the amount of any such gain any amount owed to the Participant by the Company.

16.  The various EAA executed by Defendant during the course of his employment by IBM provide, inter alia, in a paragraph titled "Cancellation and Rescission" that "IBM may cancel, modify, rescind, suspend, withhold or otherwise limit or restrict this Award in accordance with the terms of the Plan, including, without limitation, canceling or rescinding this Award if you render services for a competitor prior to, or during the Rescission Period. You understand that the Rescission Period that has been established is 12 months."

17.  As a condition of accepting his Awards, Isaacs further agreed under the terms of the EAA in a paragraph titled "Accept Your Award" "that by your acceptance of this Award, all Awards previously granted to you under the Plan or other Long-Term Performance Plans are subject to the "Cancellation and Rescission" section of this Agreement. . . ."

18.  The EAA states that "Your participation in the Plan is voluntary."

4

19.     The Terms and Conditions stipulates that "You agree that the cancellation and rescission provisions of the Plan and your Equity Award Agreement are reasonable and agree not to challenge the reasonableness of such provisions, even where forfeiture of your Award is the penalty for violation."

20.     The EAA by its terms incorporates both the Terms and Conditions and the IBM Plan into the Award.

**The Grant of Options and Awards**

21.     Defendant was granted and received stock options and restricted stock unit ("RSU") awards under the IBM Plan and the various Equity Award Agreements executed by Defendant during his employment with IBM, all of which became subject to the Cancellation and Rescission terms of the IBM Plan and the various EAA he executed during his employment.

22.     Defendant exercised 2,000 nonqualified stock options on February 2, 2011.

23.     The value of these nonqualified stock options when exercised was $116,940.07.

24.     Defendant exercised 4,123 nonqualified stock options on December 8, 2011.

25.     The value of these nonqualified stock options when exercised was $395,233.04.

26.     Defendant also exercised 2,382 nonqualified stock options on that same date, December 8, 2011.

27.     The value of these nonqualified stock options when exercised was $244,335.36.

28.     Defendant exercised 2,098 nonqualified stock options on December 22, 2011.

29.     The value of these nonqualified stock options when exercised was $180,220.20.

30.     Defendant also exercised 1,766 nonqualified stock options on that same date, December 22, 2011.

31. The value of these nonqualified options was $142,851.81.

32. All of the options listed above were exercised within the 12-month Rescission Period set forth in the IBM Plan and the various EAA he executed during the course of his employment.

33. In addition, Defendant exercised 300 RSUs on May 8, 2011.

34. The value of these RSUs when received was $50,763.00.

35. Defendant also received 256 RSUs on June 8, 2011.

36. The value of these RSUs when received was $41,998.09.

37. These RSUs were received within the 12-month Rescission Period set forth in the IBM Plan and the various EAA he executed during his employment.

38. The total value of the gain received by Defendant from these Awards during the Rescission Period and subject to rescission is $1,202,341.57.

## Agreement to Jurisdiction and Venue and Reimbursement of IBM Legal Fees and Costs

39. Recipients of these Awards under the IBM Plan, Section 15(e) thereof, agree to the exclusive jurisdiction and venue of the federal or state courts of New York, County of Westchester, to resolve any and all issues that may arise out of or relate to the Plan and the EAA.

40. Similarly, the Terms and Conditions document incorporated into the EAA, and referred to in paragraph 17 hereof, specifies the same jurisdiction and venue.

41. The IBM Plan specifies in Section 15(f) thereof, that if IBM prevails in an action to enforce the IBM Plan, the Plan participant such as Isaacs "shall pay all costs and expenses incurred by the Company in connection with that action, including reasonable attorneys' fees . . . ."

42. Similarly, the "Terms and Conditions" document incorporated into the EAA, and referred to in paragraph 19 hereof contains the same language regarding costs, expenses and fees.

**Notice of Rescission**

45. As noted above, Isaacs' employment with Cisco constitutes Detrimental Activity under the IBM Plan as more fully stated in paragraph 13 hereof.

46. By virtue of Isaacs' employment with Cisco within the Rescission Period, under the conditions of the Awards, and pursuant to the IBM Plan and the EAA, IBM is entitled to and did rescind any awards made to Isaacs during such 12-month period.

47. By letter dated April 17, 2012, IBM put Isaacs on notice it rescinded the gain he received when he exercised the Awards stated in paragraphs 22 through 38 hereof within the 12 months preceding his employment by Cisco, in the amount of $1,202,341.57.

48. The letter stated in bold emphasis **"You are required to repay to IBM your gain of $1,202,341.57."** It further stated a payment expectation date of May 12, 2012.

49. Isaacs has failed and refused to make the requested payment to IBM, though duly demanded.

## AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION

50. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 49 hereof, inclusive, as though more fully stated herein.

51. On or about December 31, 2011, Isaacs voluntarily terminated his employment with IBM.

52. Under the explicit terms of the IBM Plan, if Defendant chose to join a competitor of IBM within the Rescission Period of the EAA, he would forfeit the monetary value of all

7

Awards under the IBM Plans.

53. The Rescission Period established under the IBM Plan and the various EAA Defendant executed during his employment at IBM was 12-months "after any exercise, payment or delivery pursuant to an Award".

54. Defendant was aware of this rescission provision at the time he resigned employment at IBM and became employed by Cisco.

55. Shortly after his resignation on or about December 31, 2011, Isaacs commenced employment with Cisco January 16, 2012, within the Rescission Period of 12-months after the acceptance of his grants and awards commencing in February, 2011 as further detailed above.

56. Cisco is a competitor of IBM.

57. Defendant's employment with Cisco constitutes Detrimental Activity under Section 13(a)(i) of the IBM Plan.

58. By virtue of Defendant's employment with Cisco within the Rescission Period, under the conditions of the Awards, and pursuant to the IBM Plan and the EAA, IBM was entitled to and did rescind any Awards to Isaacs during such period.

59. Thus, by letter dated April 17, 2011, IBM put Defendant on notice that all Awards exercised and received within the 12 months preceding his engaging in "Detrimental Activity" were subject to rescission in the amount of $1,202,341.57.

60. IBM therein made due demand for payment by Defendant in the amount of $1,202,341.57, representing the total amount gained by Isaacs through the aforesaid stock option exercises and awards as stated herein.

61.     Defendant has failed and refused to make the requested payment to IBM, though duly demanded by IBM.

62.     Accordingly, there is due and owing from Defendant to IBM the amount of $1,202,341.57.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant in the amount of $1,202,341.57, as well as costs, interest, and attorneys' fees in an amount to be determined by the Court, and such other, further and different relief this Court deems just and proper.

Dated:  New York, New York
        April 12, 2013

                                    PUTNEY, TWOMBLY, HALL & HIRSON LLP
                                    Attorneys for Plaintiff

                                    By: _____
                                        Jerome P. Coleman (JC7818)
                                        A member of the firm
                                        521 Fifth Avenue
                                        New York, NY 10175
                                        (212) 682-0020